CANNON MANUFACTURING COMPANY ET AL. v. COMMISSIONERS OF CABARRUS COUNTY AND H. W. CALDWELL, TAX COLLECTOR.

(Filed 24 May, 1922.)

1. Taxation—State Tax Commission—Report of Property Valuation—Statutes—Adoption by Legislature—Powers—Functus Officio—Injunction.

The State Tax Commission was *functus officio* after the Legislature had approved and adopted its final report of the assessment and value of property, made in pursuance of Laws 1919, ch. 84, transmitted through the Governor, and could not thereafter, pending appeal or otherwise, order a reduction in the value of the property of a certain manufacturing plant in a county that is incorporated into the value of the property of that

county upon which the necessary taxes were to be computed; and where the county has collected the taxes upon this reduced valuation, a permanent injunction against the proper officers of the county from collecting taxes upon this difference in valuation is improvidently allowed, and will be dissolved in the Supreme Court, on appeal.

2.  **Injunction—Issues of Fact—Questions for Jury—Taxation—State Tax Commission.**

Where it is in controversy upon the pleadings and affidavits whether the State Tax Commission has allowed a decrease in the value of property of a large manufacturing company, and the corporation has sought a permanent injunction against the proper officers of the county from collecting this alleged excess, an issue of fact is raised for the determination of the jury, and it is error for the Superior Court judge to make permanent the temporary restraining order theretofore issued; but upon the record of this appeal a new trial is not ordered, it appearing that the injunction must be dissolved on another ground.

APPEAL by defendants from *McElroy, J.,* at August Term, 1921, of CABARRUS.

This is an action brought by the plaintiffs, the four Cannon Cotton Mill Companies, for a restraining order and permanent injunction against the defendants to restrain and prevent them from collecting certain taxes which were levied by the board of commissioners of Cabarrus County at their meeting on 3 September, 1920, for that year against the property of the plantiffs, and duly certified to the defendant sheriff and tax collector about 1 October, 1920.

The ground on which the plaintiffs ask this restraint is an alleged order of the Corporation Commission of 4 January, 1921, reducing the amount set out by the order of the county commissioners at their regular meeting in September, 1920, and directed by the tax list to be collected upon the property of the plaintiffs.

The defense set up by the county commissioners and the sheriff and tax collector is that, as appears by the record, the amount ascertained and assessed against the plaintiff's four mills on 1 May, 1920, was $19,480,308; that from this valuation the plaintiffs appealed, and that the State Tax Commission authorized and instructed the local authorities of Cabarrus to reduce said valuation of the four mills to $16,961,308; that subsequently the State Tax Commission, to complete its work before it made its report to the Governor, as required by Laws 1919, ch. 84, called the county supervisor and the county board of appraisers and review to Raleigh for further consultation and conference with the State Tax Commission, and as a final concession and settlement of the valuation of the property in Cabarrus County, authorized the county supervisor of said county in making his final report to allow a further reduction of $3,000,000 to "cover any variations that might arise," and this was done, as shown at bottom of page 51 of the record in this case;

and that all the said $3,000,000 was apportioned solely and entirely to these plaintiffs, reducing the valuation of their combined property, as the defendants claim, to $13,961,308 (no part of said $3,000,000 reduction having been apportioned to any other mill owner or any other taxpayer whatever in said county), and this amount was assessed by the defendants, county commissioners, as the basis calculated by them of the tax to be collected on the plaintiffs' mills for the fiscal year 1920, and the tax list so calculated was placed in the hands of the sheriff for collection, and upon which the county is seeking to recover ·the taxes which the plaintiffs are endeavoring to restrain.

On 10 August, 1920, the Legislature met in extra session at the call of the Governor, and at that date, in its final report on valuation, which the Governor transmitted to the General Assembly, the Tax Commission, on page 1, uses these words: "We have the honor to report the successful *completion* of this work, and present herewith the tabulated result." On page 4 the commission says: "We are assured that such values have been made as will place upon these industries a fair share of the public burden, and certainly it will be more equally distributed among them than under the former methods of valuation. The work in this line was in the nature of assistance to the local boards by whom the *final valuations* were made," and at its conclusion they express their "feeling of relief that the arduous task is *complete.*" In this report, which the Legislature adopted, the taxable value of the property in Cabarrus is stated to be $49,473,505.

In sec. 1, ch. 1, Laws, Extra Session 1920, ratified 26 August, the General Assembly enacted, "The assessment or valuation of property made under the provisions of Laws 1919, ch. 84, is *hereby approved* by the General Assembly and adopted as the basis for the levy of tax rates for the State, and all subdivisions of the State for which taxes are levied for the year 1920," and in section 5 of said chapter authority is given and provision made for the boards of commissioners of the various counties of the State to levy taxes for the various counties in conformity with this valuation for the year 1920. It appears from the record that on 30 August, 1920, the certificate from the State Tax Commission of said valuation for the county had been received, and at the regular meeting of the defendants, 3 September, the county commissioners, in accordance with the said act of the Legislature, the assessment was made out against each taxpayer, and about 1 October this tax list was placed in the hands of the sheriff, and he was proceeding in the exercise of his duties to collect the taxes so assessed and levied.

The plaintiffs sought to enjoin the collection of $22,342.17 of the taxes charged against them on this tax list, in the hands of the sheriff upon the allegation that on 4 January, 1921, the State Tax Commission

reduced the previous assessment on their property which had been placed on the tax list by the county commissioners under authority of the act of the Legislature, by the sum of $4,654,619, leaving the assessment of the plaintiffs' property reduced to $9,306,689, and ask this injunction against the collection of any taxes on the amount of said reduction. The judge granted the injunction asked for, and made it permanent, from which the defendants appealed.

*J. L. Crowell and Cansler & Cansler for plaintiffs.*
*H. S. Williams for defendant.*

CLARK, C. J. The original assessment of the plaintiffs' mills for taxation on 1 May, 1920, was $19,480,308. This was reduced by the State Tax Commission, on appeal, to $16,961,308, and later there was an order of the commission allowing to the county of Cabarrus the further rebate on its total valuation of $3,000,000, all of which was applied to reduction of the tax valuation of the plaintiffs' property; no part of the same being allotted to any other mill owner or other taxpayer whatever in Cabarrus. By these reductions the valuation of the combined mill property of the plaintiffs was reduced to $13,961,308, upon which amount the county commissioners of said county based their tax rate for the fiscal year 1920, and upon which the said county was seeking to collect its taxes.

On 10 August, 1920, the State Tax Commission made their final report of the assessed value of the property for taxation in each county, in which the valuation for Cabarrus County was $49,473,505.

In paragraph 7 of the further answer of the defendants (record, page 18), it is alleged as follows: "The total valuation of all property in Cabarrus County fixed in said report was $49,473,505, and the original and lawful assessments of the property of the complainants as fixed and determined by the board of appraisers and review, on which taxes are now sought to be collected were included in this valuation so reported by the Tax Commission to the General Assembly, extra session 1920."

In the replication to this by the plaintiffs on page 28, paragraph 7, it is said: "Paragraph 7 is admitted, except that it is denied that the assessment made against the property of these plaintiffs by the board of appraisers and review of Cabarrus County was lawful, and except that it is alleged that said report was made subject to the right of the State Tax Commission to change the valuation so placed by the board of appraisers and review of Cabarrus County upon the property of these plaintiffs, from which appeals were pending before the said commission when said report was made and when the special session of the Legislature adjourned."

This presents clear-cut the matter at issue in this proceeding. The tax assessment against Cabarrus County reported by the State Tax Commission, and transmitted by the Governor to the General Assembly, 10 August, 1920, was ratified and made final by sec. 1, ch. 1, Public Laws, Extra Session 1920, reading as follows: "The assessment or valuation of property made under the provisions of Public Laws of 1919, ch. 84, is hereby approved by the General Assembly, and adopted as the basis for the levy of tax rates by the State and by all subdivisions of the State for which taxes are levied for the year 1920, and the valuation of real property so fixed shall be adopted for the years 1921, 1922, and 1923, except that such valuations may be hereafter changed according to law."

There is in this statute no exception or authority, by reason of any alleged pending appeals or otherwise, for the State Tax Commission to change this final assessment so approved by the General Assembly.

The plaintiffs, however, contend that by action of the State Tax Commission on 3 January, 1921, the valuation of the property of the plaintiffs was reduced by a further allowance of $4,654,619, leaving the total assessments for taxes against the plaintiffs of $9,306,689, and asked an injunction against the collection of taxes in accordance with the tax list in the hands of the sheriff on said $4,654,619 by reason of this alleged reduction.

The defendants, the county commissioners and sheriff, filed an answer denying that in fact the State Tax Commission, on 3 January, 1921, had made such reduction, and also denied that it was lawful if it had been made. The defendants also excepted to the evidence in that there was no statement certified down by the State Tax Commission of such alleged reduction by the signature of either of the tax commissioners, nor under the seal of the Tax Commission, and they objected to the introduction of evidence upon these grounds, and also because there was no evidence of the signature even of the clerk who had written the letter making such statement, and they also introduced the affidavit of a former clerk of the State Tax Commission, in whose hands all appeals had passed down to 1 November, 1921, that there was no appeal pending in which said reduction could have been allowed, and that the chairman of the State Tax Commission had admitted that there had been no such order of reduction attempted by the State Tax Commission as alleged by the plaintiffs.

In view of the issues of fact raised by the pleadings and on the evidence, it was error, in any view, for the judge to grant a permanent injunction against the collection by the sheriff of $22,342.17 which had been duly assessed by the tax list against the property of the plaintiffs for the issues of fact could only be determined by a jury.

However, it is not necessary to grant a new trial upon this ground, for upon consideration of the report of the Tax Commission made to the Governor and transmitted by him to the General Assembly as the final assessment of the property in the 100 counties of the State, and the enactment by the Legislature on 26 August, 1921, above set out, we are of opinion that there was no authority in the State Tax Commission, whether there were or were not appeals pending from any county, to change or modify in any way the action of the General Assembly which in its terms was final.

Whether or not there .was any action by the State Tax Commission subsequent to the ratification of that act attempting to modify the valuation assessed against the plaintiffs as embraced in the report of the State Tax Commission and the act of the Legislature, the State Tax Commission was *functus officio* as to any power to change in any way the valuation of the plaintiffs' property if it was attempted in January, 1921, as alleged, and the injunction appealed from must be set aside, and the sheriff of Cabarrus will proceed to collect the taxes assessed against the plaintiffs according to the list placed in his hands by the commissioners in October, 1921, and therewith collect the deferred interest on the amount which appears on the tax list to be still due and unpaid by the plaintiffs according to the tenor of the mandate to him directed by the defendants, county commissioners.

Reversed.